UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MARIANA CASTRO,                     )
                                    )
    Plaintiff,                      )
                                    )
v.                                  )          7:25-cv-697-EGL
                                    )
CENTRAL ALABAMA ASPHALT   )
AND CONSTRUCTION, LLC et al.,  )
                                    )
    Defendants.                     )

**MEMORANDUM OPINION & ORDER**

Mariana Castro sued Central Alabama Asphalt and Construction, LLC (CAAC), Cody Austin Pharr, and Reuben Bias to recover for injuries caused by a car crash. Docs. 1, 16. Defendants move for summary judgment on all claims. Doc. 27. For the reasons below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

On October 3, 2024, Castro sat as the front-seat passenger while her sixteen-year-old son, Emanuel Perez, drove the family from their home in Harvest to Decatur. Doc. 28-1 at 9-13, 41. Along the way there, at the intersection of Alabama 251 and Harvest Road, Central Asphalt was performing work on the highway. *Id.* at 14-15. So when Perez approached that intersection, a woman holding a plastic stop sign and wearing a green vest stopped him. *Id.* at 15. According to Perez, the woman

then signaled with her sign to halt oncoming traffic from 251 and gestured for Perez and the cars behind him to move on through. *Id.* at 15, 44. Perez and the two or three cars behind him, relying on that signal, then turned left onto 251. *Id.* at 15, 44-45. Perez, however, continued slowly because he noticed a cloud of "dark smoke" ahead. *Id.* at 27. Not knowing where this cloud was coming from and unable to see anything beyond—no blinking lights or any other indicator of what lay ahead— Perez slowed down to about twenty-five miles per hour, fearing that a sudden stop might cause a collision with the traffic behind him. *Id.* at 27-28, 45. As he entered the cloud, Perez's car suddenly slammed into the rear end of a large broom-sweeper working on the road. *Id.* at 46.

Though Perez remained conscious, his mother, Castro, was instantly incapacitated. *Id.* She was rushed to the hospital and was diagnosed with damage to her pancreas, heart, lungs, and sternum. Doc. 28-3 at 24.

Castro sued Austin Pharr, Reuben Bias, and CAAC. Austin Pharr operated the broom-sweeper. Doc. 29 at 7. Reuben Bias was supervising the road work that day and was driving a pilot car traveling opposite the broom-sweeper when the accident happened. Doc. 28-5 at 4. Bias would have ordinarily instructed the "flaggers" controlling traffic to not allow any cars onto the road until he had returned to lead them through the construction zone. *Id.* at 6. He attempted, but failed, to stop Perez's

2

car before it collided with the broom-sweeper. *Id.* CAAC employed Pharr and Bias. *Id.* at 3.

Castro has alleged that Pharr, Bias, and CAAC are liable for negligence, recklessness/wantonness, *respondeat superior* liability, and failure to train, each of which resulted in the harms she suffered. *See generally* Docs. 1, 16.

Defendants now seek summary judgment, arguing that Castro has failed to produce evidence supporting her claims, and that they are therefore entitled to judgment as a matter of law. Doc. 27.

## STANDARD

Summary judgment is appropriate when the facts, supported by the record and taken in the light most favorable to the non-movant, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And one is "material" if it is an element of the underlying claim that might affect the case's outcome. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The movant bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The movant may discharge its burden by pointing out to the district court that there is no

3

evidence supporting an essential element of the nonmovant's case. *Id.* at 325. The district court must view the evidence and all factual inferences in the light most favorable to the nonmovant. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the movant has adequately supported its motion, the nonmovant then must show that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the record evidence would not permit a rational trier of fact to find for the nonmovant, then there is no genuine dispute for trial. *Id.* All reasonable doubts, however, are resolved in favor of the nonmovant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

Defendants argue they are entitled to judgment as a matter of law on all of Castro's claims. Castro counters that genuine and material disputes of fact exist for each claim. Her claims are considered in turn.

## I.    Count 1: Negligence

Defendants argue that Castro's negligence claim fails as a matter of law because Perez was the "sole proximate cause" of the accident. Doc. 29 at 10.

According to Defendants, Perez failed to "maintain[] a proper lookout and tak[e] sufficient precautions" because he "continu[ed] to drive even though he had zero visibility." *Id.* at 11-12. Relying on a decision from the Texas Court of Appeals,

Defendants contend that a driver's failure to take necessary precautions bars a negligence claim for damage resulting from that failure. *Id.* (citing *Arcides v. Rojas*, 677 S.W.3d 154, 162-63 (Tex. App. 2023)). They argue that because "total darkness is an open and obvious condition that bars a negligence claim," *id.* at 14, the dust cloud in this case, though "not necessarily" open and obvious, *id.*, is enough like darkness to bar Castro's negligence claim. Thus, Perez's decision to drive into the dust cloud "is the sole proximate cause of the accident," thereby entitling Defendants to judgment as a matter of law. *Id.* at 18-19.

"[S]ummary judgment is generally not appropriate in a negligence action." *Mitchell v. Torrence Cablevision USA, Inc.*, 806 So. 2d 1254, 1256 (Ala. Civ. App. 2000). And although "[c]ontributory negligence is an affirmative and complete defense" to negligence under Alabama law, *Ridgeway v. CSX Transp. Inc.*, 723 So. 2d 600, 606 (Ala. 1998), "the existence of contributory negligence" is normally a question for the jury, *Wyser v. Ray Sumlin Constr. Co.*, 680 So. 2d 235, 238 (Ala. 1996). It is "only when the facts are such that all reasonable men must draw the same conclusion that contributory negligence is ever a question of law for the court." *Id.*

But Castro is the plaintiff here, not Perez. And "[t]he contributory negligence of a driver does not bar a passenger's right to recovery against a third party if the passenger is otherwise entitled to recovery." *Barnett v. Norfolk S. Ry. Co.*, 671 So. 2d 718, 720 (Ala. Civ. App. 1995). Knowing this, Defendants tie Perez's alleged

negligence to Castro in a roundabout way: they argue it is a superseding cause of Castro's harm, thereby cutting off their own liability.[1]

An intervening act does not become a superseding cause if it is "a normal response to the stimulus of a situation created by the negligence of another" and the way it is done "is not extraordinarily negligent." *Hilburn v. Shirley*, 437 So. 2d 1252, 1254 (Ala. 1983) (quoting 65 C.J.S. Negligence § 111(5) (1966) & Restatement (Second) of Torts § 443 (1965)).

Defendants needed to show that Perez's actions were both abnormal and "extraordinarily negligent" to prevail on their "superseding cause" argument. *Id.* The nearest they get is by suggesting that Perez should not have kept driving after his vision became obscured. Doc. 29 at 14-15. But they concede that the dust cloud's danger was "not necessarily" open and obvious, *id.* at 14, and they do not contest that Perez slowed down after he lost sight, *see generally id.*; Doc. 28-1 at 27. He would have stopped entirely, according to his testimony, if not for his reasonable fear that the cars behind him would smash into the back of his Toyota Corolla if he stopped too quickly. Doc. 28-1 at 45. And even if that fear was unreasonable, was it extraordinarily negligent? It would be strange to require a man to avoid the

---

[1] Defendants phrase this as Perez being the "sole proximate cause" of Castro's harm. Doc. 29 at 18-19. An act proximately causes harm when it, "in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994). The underlying question therefore is whether the actions of CAAC and its employees were interrupted by an independent, superseding cause.

possibility of peril ahead by submitting to the clear hazard behind him. Perez's choice not to stop suddenly instead appears to be a "normal response to the stimulus of a situation created by the negligence of another," and certainly not extraordinarily negligent. *Hilburn*, 437 So. 2d at 1254.

Along with their superseding cause argument, Defendants contend that they did not breach any duties owed to Castro. Doc. 29 at 15-17. The first part of that argument is a repetition of their superseding cause argument. *Id.* at 15-16. The second part, however, deals exclusively with the broom-sweeper's lack of working lights. *Id.* at 16-17. Defendants argue that because Perez could not see anything through the dust on his windshield, then surely he would not have been able to see the lights on the broom-sweeper if they were on. *Id.*

That argument fails. Perez testified that he could not see anything through the dust, Doc. 28-1 at 28, but that does not prove he would not have been able to see the lights if they were on. If a man peers out of a window at night, he might see nothing in the dark. But that does not prove he would not be able to see a streetlight in the distance if one were activated. Similarly, how can we conclude that, had the broom-sweeper's lights been on, they could not pierce through the darkened veil thrown

7

over Perez's windshield? Whether they could have is a factual question unsuited for resolution on summary judgment. *See* Fed. R. Civ. P. 56(a).

Because Defendants fail to demonstrate the absence of any element essential to Castro's negligence claim or why they are entitled to judgment as a matter of law, the Court will **DENY** summary judgment.

## II.    Count 2: Wantonness & Recklessness

Castro contends that Defendants are "jointly and severally" liable for recklessness and wantonness because they "knew or should have known" the risks that their actions could create for drivers, and because they failed to take precautions necessary to protect those drivers. Doc. 16 at ¶¶20-23. Defendants respond by arguing that Castro failed to produce substantial evidence demonstrating that Defendants acted recklessly or wantonly. Doc. 29 at 17.

Alabama law defines wantonness as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code § 6-11-20(b)(3). Unlike negligence, which "is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care," wantonness involves "acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury[.]" *Tolbert v. Tolbert*, 903 So. 2d 103, 114-15 (Ala. 2004). To prove wantonness, a plaintiff must demonstrate "[1] the conscious doing of some act or the conscious omission of some duty [2] with knowledge of the

8

existing conditions and [3] while conscious that from the doing of that act or by the omission of that duty injury will likely or probably result." *Senn v. Alabama Gas Corp.*, 619 So. 2d 1320, 1324 (Ala. 1993). To survive summary judgment on a wantonness claim, a plaintiff must provide substantial evidence creating a genuine issue of material fact that a defendant acted with reckless or conscious disregard to the rights or safety of others. *Sanchez v. Knight*, No. 1:11-CV-863-MEF, 2013 WL 800692, at *3 (M.D. Ala. Mar. 4, 2013).

Castro has not satisfied her burden here. She argues that the circumstances were so obviously dangerous that Defendants must have known that their actions would produce the harm she suffered. Doc. 32 at 23-24. It is true that Bias, Pharr, and the flagger's actions here created a risk of harm, and might have amounted to negligence, but there is no evidence—let alone substantial evidence—that any of them consciously disregarded a known danger or risk. *See generally* Docs. 28, 31.

It is not enough for Castro to show that Defendants' acts or omissions were careless or risky; she must show that they knew of the danger involved and decided to act anyway. *See Bozeman v. Cent. Bank of the S.*, 646 So. 2d 601, 603 (Ala. 1994). But that evidence is not here. None of the available evidence sheds substantial light on what any of the defendants knew about their actions preceding the accident. There is no evidence that Bias knew Perez and other cars were coming, or that he consciously failed to notify the flagger to wait for him. *See generally* Docs. 28, 31.

9

There is nothing suggesting that Pharr knew anything was wrong, or even that he knew his lights were not on. *Id.* And there is no evidence that the flagger was aware that the road was unsafe. *Id.*

"Wantonness is not merely a higher degree of culpability than negligence." *Tolbert*, 903 So. 2d at 114. Negligence and wantonness are "qualitatively different tort concepts of actionable culpability." *Id.* Unlike negligence, wantonness "imports premeditation, or knowledge and consciousness that the injury is likely to result" from the act or omission. *Id.* at 115. "Ordinarily, summary judgment should not be granted in cases where motive, intent, subjective feelings, and reactions are to be searched." *Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir. 1986). But after "a full opportunity to muster all the evidence" she could, Castro did not demonstrate a material disputed fact regarding Defendants' consciousness of risk. *Id.* The Court therefore will **GRANT** summary judgment on Castro's wantonness/recklessness claim in Defendants' favor.

## III.   Count 3: Vicarious Liability

Castro argues that CAAC is vicariously liable for the tortious acts of its employees. Doc. 16 at ¶26. Defendants counter that vicarious liability attaches only when a tort was actually committed. Doc. 29 at 20. But that begs the question. *See* ARISTOTLE, PRIOR ANALYTICS B16, at 90-92 (Robin Smith trans., Hackett Publishing Co. 1989) (350 B.C.). CAAC does not deny that it employs Pharr, Bias,

and the flagger, or that they acted within the scope of their employment. *See generally* Docs. 29, 33. It instead rests on its arguments against the sufficiency of the underlying tort to relieve itself of liability. Doc. 29 at 20. But because summary judgment is due to be denied on Count 1, CAAC is not discharged of its vicarious liability.

However, Alabama law does not recognize a standalone cause of action for *respondeat superior* liability. *Oak Batton v. Oak Inv. Grp. Corp.*, 591 F. Supp. 3d 1076, 1087 (N.D. Ala. 2022). Accordingly, the Court will **GRANT** summary judgment in Defendants' favor on Count 3. *Respondeat superior* nevertheless remains applicable to this action, and Castro may continue to argue CAAC is liable for the negligence of its employees under that doctrine.

## IV. Count 4: Failure to Train

Castro argues that CAAC is directly liable for its failure to train its employees. Doc. 16 at ¶28-30. She also alleges that CAAC negligently supervised its employees, failed to provide sufficient "security persons," and failed to "furnish sufficient guidelines." *Id.* at ¶28. Defendants counter this by pointing out that Castro has not sought any discovery regarding CAAC's policies or procedures to demonstrate that CAAC failed to provide sufficient training. Doc. 29 at 20-21. The Court agrees that the evidence is insufficient to support this claim.

A claim of negligent failure to train or supervise requires showing that an employee acted incompetently, and that the employer either knew of the incompetence or could have discovered it by exercising due diligence. *Bedsole v. Clark*, 33 So. 3d 9, 15 (Ala. Civ. App. 2009).

Castro has produced no evidence indicative of CAAC's knowledge of the alleged incompetence of its employees, or that it could have discovered that knowledge through any practice or procedure that it should have reasonably implemented. *See generally* Docs. 28, 31, 34. Given that absence, the record would not permit a rational trier of fact to find for Castro on this claim and therefore there is no genuine dispute for trial on it. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Accordingly, the Court will **GRANT** summary judgment in Defendants' favor on Count 4.

## CONCLUSION

Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED IN PART** and **DENIED IN PART**. Finding no genuine dispute of material fact, the Court **HOLDS** that, as a matter of law, Castro has failed to produce evidence that might satisfy her burden on her claims of wantonness, recklessness, and failure to train. The Court therefore **GRANTS** summary judgment in Defendants' favor on those claims. The Court also **GRANTS** summary judgment in Defendants' favor on Count 3 because that doctrine does not constitute a standalone cause of action under Alabama law. But because a genuine dispute of material fact exists as to Defendants' negligence, the Court **DENIES** summary judgment on that claim.

**DONE** and **ORDERED** this 26th day of March, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

13